Adam L. Mills, John H. Gay, Charles Mullikin, John O'Fallon, William C. Wiggins, Andrew Christy, Melanie Christy, Joseph A. Christy, Elizabeth Christy, Mary F. Christy, (which Melanie is . the widow, and which Joseph A., Elizabeth, and Mary F. are the only children and heirs of Samuel C. Christy, deceased,) said children being infants, and appearing by said Melanie, their next friend, Emily Pratte, widow of Bernard Pratte, deceased, Emilie, his daughter, wife of Ramsey Crooks, Ramsey Crooks, Bernard Pratte, son of said Bernard, deceased, Louis Piggot and Therese, his wife, which Therese is also a daughter of said Bernard Pratte, deceased, Stephen F. Niedlet and Celeste, his wife, she being also a daughter of said Bernard Pratte, deceased, Louis V. Bogy, and Pelagie, his wife,

(1) 3 Bibb.

who is also a daughter of said BERNARD, deceased, and JOSEPH BLAIR and DIANA, his wife, which DIANA is a daughter of said BERNARD, deceased, appellants, *v.* WILLIAM G. BROWN, JOHN D. HUGHES, JAMES ANDERSON, WILLIAM PENN, CHARLES SARGENT, and the COUNTY OF ST. CLAIR, appellees.

*Appeal from St. Clair.*

An act of the legislature, of March 2d, 1819, granted to Wiggins, the right to establish a ferry "on the waters of the Mississippi, near the town of Illinois, in this State," and "the running of the same from lands, at said place, that may belong to him," provided that he, "his heirs, or assigns, should have the ferry in actual operation within eighteen months from and after the passage of the act." That time expired September 2d, 1820. The complainants, in a bill in chancery, to protect their right to the ferry, and to prevent the establishing of another ferry near the same place, stated that the land upon which the ferry was established was conveyed to Wiggins, July 13th, 1822, by Julie Jarrot; and that a "piece of said tract of land lying on the Mississippi, near the centre of said tract, was claimed by one James Piggot, which claim was recognised by government, and a patent issued therefor, and that said Wiggins acquired this piece several years before the date of the deed of Julie Jarrot to him, and first established his said ferry on this piece, then being the owner thereof, under the said Piggot's legal representatives; which piece of land is included in the larger tract," conveyed by Julie Jarrot, and was patented to John McKnight and Thomas Brady, in 1816, and conveyed by them to Wiggins, copies of which deeds &c. were referred to and made exhibits in the bill. The deed from McKnight and Brady was executed May 19th, 1821. The description of the land in the bill showed it to be on the Mississippi, &c. &c. The bill also stated that in pursuance of said act, Wiggins did establish a ferry on said tract, within the time limited by said act, and it "was commenced by said Wiggins, from lands that belonged to him; and on the 6th of February, 1821, the legislature authorized Wiggins to remove his ferry-landing to other lands owned by him on the Mississippi: *Held,* that the decree of the Court below, in dismissing the bill on demurrer, must be affirmed, on the ground that the bill *did not set out with clearness and certainty, that* Wiggins owned any land on the waters of the Mississippi river, near the town of Illinois, on the 2nd of March, 1819, or within eighteen months thereafter, on which the grant could operate; and because it did not appear, with certainty, that Wiggins owned any land on the Mississippi river, on the 6th of February, 1821, to which the ferry before that time established by Wiggins, could be removed, in pursuance of the act passed on said 6th of February.

A demurrer to a bill in chancery admits all that is well stated or pleaded, but it cannot supply defects in substance, or cure a defective statement of title.

THE appellants filed their bill in chancery in the St. Clair Circuit Court, setting forth :

"That the claim to a tract of land, containing four hundred acres, lying east of the Mississippi river, and fronting the town of St. Louis, in Missouri, was confirmed to Pierre Coudaire, and his legal representatives, by act of Congress of the sixteenth day of April, in the year eighteen hundred and fourteen, whereby the title, in fee simple, to said tract of land, was vested in Nicholas Jarrot, purchaser and assignee of Joseph Coudaire, son and only heir of said Pierre Coudaire, which is situate in St. Clair county, in Illi-

nois, and which said tract of land has been surveyed and located by the United States, and is bounded south by the Cahokia commons, on the west by the Mississippi river, extending northwardly nearly to a point opposite the centre of Bloody Island, and bounded eastwardly by the Cahokia creek or river L'Abbé. That said Joseph Coudaire conveyed the same tract of land to said Jarrot, by deed dated the seventeenth day of April, in the year eighteen hundred and nine ; and that the same land was conveyed by Julie Jarrot, widow of said Nicholas, being thereto duly empowered by the last will of said Nicholas, to Samuel Wiggins, by deed dated the thirteenth day of July, in the year eighteen hundred and twenty-two. That said Samuel Wiggins, by his deed dated the first day of August, in the year eighteen hundred and thirty-one, conveyed the same land to said John O'Fallon, Adam L. Mills, Bernard Pratte, now deceased, William C. Wiggins, Samuel C. Christy and Charles Mullikin. That said John O'Fallon has sold a part of his interest in said land, and conveyed the same, by deed, to John H. Gay, and the said Mills hath likewise sold a part of his interest in said land, to Andrew Christy, and given his title bond therefor, copies of which said several instruments of writing and conveyances, are hereto annexed, and prayed to be taken as part of this bill, as also the said survey, and also copies of original documents and proofs and proceedings in relation to said Coudaire's claim from the United States Land Office at Kaskaskia, in Illinois. That said Bernard Pratte and Samuel C. Christy are both dead, leaving their only heirs and representatives as to said land, the persons above named as such in this bill. Your orators further state, that said Pierre Coudaire settled upon said land, and lived on it many years before said confirmation, and that on his death, his only son, Joseph, likewise claimed, and conveyed the same as aforesaid. That said Nicholas Jarrot while the owner thereof, exercised acts of ownership over it, as his own ; and the said Samuel Wiggins soon after he acquired his title as aforesaid, took possession of it, and continued in possession thereof, as your orators are informed and believe, claiming it as his own, till he conveyed the same as aforesaid ; and that ever since his said conveyance, his (the said Wiggins') grantees, being the persons above named as such, took possession of the same tract of land, and the possession of the same has remained in them, and those claiming under them, until the present time ; and that your orators are now in the exclusive possession of the same tract, claiming to own it, in fee simple, and as they fully believe, and so charge, being the undoubted owners thereof, in fee simple.

Your orators and oratrices further state, that the said tract of land is bounded on the east by the Mississippi river, perhaps a mile, and that the right and advantage of ferrying therefrom, and of landing thereon, is of great value, as the city of St. Louis lies

opposite, on the west side of the river, and that a ferry has been owned, conducted, and crossed over by the owners of said tract, from the said tract, across the Mississippi, from the time when said Samuel Wiggins acquired said land as aforesaid, down to the present moment, to their great gain and emolument.

"Your orators and oratrices further represent, that on March second, in the year eighteen hundred and nineteen, an act was passed by the General Assembly of the State of Illinois, entitled '*An Act to authorize Samuel Wiggins to establish a Ferry upon the waters of the Mississippi,*' a copy of which act is herewith exhibited as part of this bill; and that, in pursuance thereof, he, said Wiggins, did establish a ferry on said tract, within the time limited by the said act, which ferry has been kept up, according to said act, ever since, and was transferred by him, in his said deed of the tract aforesaid, and since then has been kept up and conducted by his, the said Wiggins' grantees, the owners of said land, to this day, and is now conducted by your orators and oratrices, at great labor and expense, for the accommodation of the public; which ferry has been always, and is, near the town of Illinois, in the State of Illinois, and was commenced by said Wiggins, from lands that belonged to him, and, while he owned it, was always run and conducted from lands owned by him, and ever since he transferred it, it hath been always run from lands owned by the proprietors of said ferry, and is now run by your orators and oratrices, from the same tract of land, to wit, the tract above described, and that said ferry hath always been managed and conducted by such boats as were propelled by horses or steam; and they further state, that a piece of said tract of land lying on the Mississippi, near the centre of said tract, was claimed by one James Piggot, which claim was recognised by government, and a patent issued therefor, and that said Wiggins acquired this piece several years before the date of the deed from Julie Jarrot to him, and first established his said ferry on this piece, then being the owner thereof, under said Piggot's legal representatives; which piece of land is included in the larger tract of Coudaire, and was patented by the United States to John McKnight and Thomas Brady, in eighteen hundred and sixteen, and conveyed by them to Samuel Wiggins, by deed; copies of which papers and deed are herewith exhibited, and prayed to be taken as parts of this bill of complaint. And they further set forth, that, by the act aforesaid, the right was expressly conferred on said Samuel Wiggins, his heirs and assigns, to establish and run a ferry from his lands on the Mississippi, near said town of Illinois, for ever; provided no craft or boat should be used but what should be propelled by horses, oxen, or other four-footed animals, or steam; and by the second section of said act, it was provided, that no person, except those who had their ferries established at that place, should establish any ferry of said description within one mile of the

said Wiggins' ferry; and that, if any ferry were established, in contravention of that act, the boat or boats should be forfeited to said Wiggins, his heirs or assigns, and might be attached before any court in Illinois, having competent jurisdiction. Your orators allege and charge, that though the General Assembly have passed an act, purporting to repeal said second section, yet that the right of ferrying remains, both as at common law, and as conferred and guarantied by said act, which right is of great value to your orators and oratrices, and is protected both by the Constitution of Illinois and of the United States, and cannot be legally infringed, taken away, or destroyed, without the consent of your orators and oratrices, who are the successors of said Wiggins and his assigns, according to the true intent and meaning of said act, and the owners of said land, and of all the said Wiggins's right and privilege, whether by said statute or otherwise, to ferry therefrom; and your orators and oratrices have been and are conducting said ferry, in strict conformity with the requirements of said act, and to the full accommodation of the public; and have invested in it, upon the full assurance of their right, a great amount of capital, relying upon the law of the land for protection and safety, in the enjoyment of their own property and privileges; and they well hoped, that they would remain undisturbed in the exercise of their undoubted privileges, and be permitted to receive the profits of their exertions and outlay for the accommodation of the public. But your orators and oratrices state, that in this they have been disappointed; and that, without their consent, and contrary to their wishes, an act was passed by the said General Assembly, on the second day of March, eighteen hundred and thirty-nine, entitled ' *An Act to authorize St. Clair County to establish a Ferry across the Mississippi River,*' whereby William G. Brown, John D. Hughes, James Anderson, William Penn, and Charles Sargent, of St. Clair county, were appointed commissioners, and were required to examine the ground, and locate a road and ferry-landing between Cahokia creek and the Mississippi river, opposite St. Louis; and it was thereby further enacted, that said road and ferry-landing should be located three hundred feet wide, on the most eligible ground for said purpose, and that said road and ferry-landing, when so located, and the report of said commissioners filed in the office of the clerk of the County Commissioners' Court of said county of St. Clair, should be and remain a public highway for ever, and that the County Commissioners' Court of said county might cause said land, on which said road and ferry-landing should have been located, to be condemned, and pay to the legal owners of said land the damages sustained by said owners; and after said land should be condemned, and said damages paid out of the funds of the county, the said Commissioners' Court should have power, by their agents or otherwise, to enter upon said land so condemned, and establish a

ferry across the Mississippi river; and the said County Commissioners' Court might either carry on said ferry for the county itself, or it might lease the same, for any term not exceeding five years at any one time, to any persons; and it was furthermore enacted by said act, that for the purpose of compensating the legal owners for the land thus appropriated for public use, it should be the duty of the Commissioners' Court aforesaid, to cause the sheriff of St. Clair county to summon twelve men, who should assess the damages which such owners of the land might sustain by reason of the location of the said road and ferry-landing. And your orators and oratrices further state, that the said commissioners, William G. Brown, John D. Hughes, James Anderson, William Penn, and Charles Sargent, have, under color of said last mentioned act of Assembly, proceeded and laid out, and located the said road three hundred feet in width across the said tract of land so owned by your orators and oratrices as aforesaid, confirmed to said Coudaire's legal representatives, to the Mississippi river, comprehending three hundred feet in width of the landing on said river, belonging to your orators and oratrices, and have made their report to the said County Commissioners' Court, which is filed, as they believe, in the office of the clerk of the same; and your orators and oratrices are informed, and believe, that a meeting of said County Commissioners' Court has been, or will immediately be called, for the condemning said piece of land so located, and of carrying out the said last mentioned act of Assembly, and thus of taking from your orators and oratrices their property and valuable right, against their will, and that, too, as they believe, without any means of their obtaining adequate compensation therefor. Your orators and oratrices invoke the aid of the Constitution of the United States, and of the State of Illinois, and of the sacred principles of law and justice, against this attempt, which they charge to be a most manifest violation of their rights, under the pretended sanction of law.

" Your orators and oratrices allege, that under the laws and Constitution of the country, the right does not exist thus to seize their property, and take it from them, for the very purpose of using it for the objects for which your orators are using it, and for which use of it they have an express irrepealable act of Assembly; and, further, that if said last mentioned act of Assembly were constitutional, in every respect, (which is denied utterly,) yet that it provides a mode of assessment of damages, and of compensation for said land, altogether unjust, inequitable, and against fundamental principles, in this, that the very party that acquires the benefit and emolument of said right of way and ferry, is made the judge of the amount of compensation, inasmuch as the jury is to be called from the county of St. Clair, in order to assess the damages, and the revenues derived from said way and ferry belong to said county, who, by this

act of Assembly, are to acquire, for their benefit, the contemplated ferry, are to pay your orators and oratrices, in purchase of the same, such price as the same citizens choose to put upon it ; and your orators and oratrices further charge, that said act doth not authorize, as they understand it, any damages or compensation to them for the great injury to their vested right of ferrying, now in use by them, from their own land, which must inevitably result from the establishment of another ferry at their side, from the same land ; nor does it allow any compensation for the great injury to them on account of the diminution of the value of the residue of said land and right of ferrying, by the establishment of a rival ferry at their side ; and they charge generally, that said act is unconstitutional, that the proceedings of the said commissioners are illegal, inequitable, and oppressive, and will work, if permitted to go on, irremediable mischiefs to your orators and oratrices, who possess an undoubted statutory, as well as common law privilege, of ferrying from their said land, and of using their own property in every way profitable to them, which is not forbidden by the laws. Your orators and oratrices further allege, that by an act of Assembly of the said State of Illinois, passed the sixth day of February, in the year of our Lord one thousand eight hundred and twenty-one, entitled " *An Act to authorize Samuel Wiggins to make a Turnpike Road, and for other purposes,*" the said Wiggins, his heirs and assigns, were authorized to remove the ferry, which said Samuel Wiggins had established as aforesaid, upon any land that might belong to him or them, on the said Mississippi river, under the same privileges as were prescribed by said act of March second, eighteen hundred and nineteen ; which act of February sixth, eighteen hundred and twenty-one, conferred the said privilege of removing said ferry absolutely, without the reservation of the right to repeal the same ; a copy of which act is hereto annexed, as a part of the bill ; and that the said Samuel Wiggins, while owner of said ferry, and his said successors in the ownership of the same, have kept up said ferry, and maintained and run the same in strict conformity with said acts granting the said privileges, and with the law, and to the great advantage of the public, which has been and still is well served and accommodated thereby. And your orators and oratrices well hoped, that they should have been permitted to enjoy their said ferry privileges in peace, as they had a right to do. But now, so it is, that the said William G. Brown, John D. Hughes, James Anderson, William Penn, and Charles Sargent, and the said county of St. Clair, combining and confederating with divers other persons, whose names, when discovered, your orators and oratrices pray may be inserted herein, and they made parties hereto, have proceeded, as above detailed, in regard to said road and ferry-landing of three hundred feet in width, and are now about to appropriate the same to the use and emolument of said county as aforesaid, under color

of the act of Assembly, in that behalf above stated. All which actings and doings are against equity and good conscience."

The bill concluded with a prayer for an injunction against Brown, Hughes, Anderson, Penn, Sargent, and the County Commissioners.

Exhibit No. 6. was a deed from John McKnight and Thomas Brady and Harriet Brady, his wife, dated May 19th, 1821, to Samuel Wiggins, of premises described as follows:

" All that certain piece or parcel of land situate in the county of St. Clair, and State of Illinois, containing sixty-eight acres, and one hundred and twenty-five thousandths of an acre, being the southern part of a certain tract of land, being the grant of militia right made by William Henry Harrison, Governor of the Indiana Territory, to James Piggot, deceased, as assignee of one James Ware, by patent, bearing date at Vincennes, on the twelfth day of March, one thousand eight hundred and three, and recorded in the United States Land Office for the district of Kaskaskia, in book A., pages 74 and 75, the sixth day of December, one thousand eight hundred and four, bounded as follows: beginning at a walnut on the bank of the Mississippi river, thence south five degrees west, two hundred and eighteen perches, to a cottonwood; thence south, eighty-five degrees east, seventy-three and one-half perches, to an elm; thence north, five degrees east, two hundred and eighteen perches, to a sycamore; thence north, eighty-five degrees west, seventy-three and a half perches, to the place of beginning; joining the Mississippi on the south, vacant land on the southeast, Cahokia field on the northeast, and vacant land on the northwest; containing one hundred acres and twenty-three perches, as in the said patent described, as will appear by the conveyance of the whole of the said land, from Joseph Piggot and Hannah, his wife, Daniel Quick and Nancy, his wife, formerly Nancy Pigot, William Patterson and Aseneth, his wife, formerly Aseneth Piggot, Newton Piggot, to the said John McKnight and Thomas Brady, by deed bearing date January 4th, 1815; and by a release of dower from Frances Collard to the said John McKnight, Thomas Brady, by deed bearing date January 16th, 1815, and which was also granted by letters patent from the United States to the said John McKnight and Thomas Brady, and which property was afterwards divided between the said Samuel Wiggins and the said John McKnight and Thomas Brady, by order of the Circuit Court of the county of St. Clair, in the State of Illinois, and the said sixty-eight acres and one hundred and twenty-five thousandths were allotted and set off as the part of the said John McKnight and Thomas Brady, as by the record remaining in said Court, will more fully and at large appear."

The cause was heard at the November term, 1839, of the Court below, the Hon. Sidney Breese presiding, on demurrer to the bill.

The bill was dismissed, and the complainants appealed to this Court.

[This cause was very ably argued by the counsel for the respective parties; but as the main points raised in the argument are not decided by the Court, the points and authorities of counsel are omitted by the Reporter.]

H. GAMBLE, S. T. LOGAN, and J. SHIELDS, for the appellants.

LYMAN TRUMBULL and J. BUTTERFIELD, for the appellees.

SMITH, Justice:

It is discovered, upon an examination of the bill in this cause, that there is a serious defect in the statement of the complainants' title to the land, which materially affects the claim for the relief sought by them.

The act of the General Assembly of the State of Illinois, of the 2d of March, 1819, under which the complainants derive their title to the ferry and ferry privileges, described in the bill, as the assignees of Samuel Wiggins, the grantee named in the act, authorized the establishment of such ferry "on the waters of the Mississippi, near the town of Illinois, in this State," and "the running of the same from lands at said place, that may belong to him" (Wiggins); and the act further provided, that "Wiggins, his heirs, or assigns, should have the ferry in actual operation within eighteen months from and after the passage of the act."

The time within which Wiggins was to establish the ferry, and have it in actual operation, and by which the grant was to be inoperative, in case it was not established and in operation by that period, expired on the 2d day of September, 1820. In the description of the land, and the mode and time of acquisition, the bill recites that Wiggins became the purchaser thereof, from Julie Jarrot, by deed of the 13th day of July, 1822, and that Wiggins, by deed of the first day of August, 1831, conveyed the same lands to a portion of the complainants, and to the ancestors of others of the complainants, of whom they are the legal representatives.

It is further recited in the bill, that a piece of said tract of land, lying on the Mississippi, near the centre of the tract, was claimed by one James Piggot, which claim was recognised by government, and a patent issued therefor, and that Wiggins acquired this piece several years before the date of the deed from Julie Jarrot to him; and first established his ferry on this piece, then being the owner thereof, under Piggot's legal representatives, which piece of land is included in the large tract, and was patented by the United States to John McKnight and Thomas Brady, in 1816; and was conveyed by them to Wiggins, by deed; copies of which papers and deed are said to be exhibited with the bill. This is the entire description in the bill of the inception of title to the lands by Wig-

gins. With the bill, no exhibits are, however, transcribed into the record, and we are consequently uninformed as to the contents or character of the conveyance from McKnight and Brady to Wiggins, and from Pigot's legal representatives, either in point of date, or description of land. The act of 1819 declares, that the ferry shall be run from lands at the place named in the act, " that may belong to him " (Wiggins).

The question here, in construing the first section of the act of 1819, naturally arises, Did the grant to Wiggins require that he should be the owner of the land at the passage of the act, or of such as he might subsequently purchase, before the period of the forfeiture of the grant? If the word " may," as understood in legal parlance, be rendered *shall,* it is apparent that Wiggins, by the facts disclosed by the complainants, in their bill, had no land at the place designated in the law of 1819, at the time of the passage thereof; and consequently he had no estate in the lands upon which the grant could operate ; and the act was necessarily nugatory in its character, and was altogether inoperative in its effect.

On the other hand, if the grant be construed to operate on lands which Wiggins might acquire subsequently to the passage of the act, and before the time limited for the commencement of the ferry, it is equally clear, that the acquisition of the lands, by Wiggins, through the purchase of Julie Jarrot, was upwards of one year and ten months after the time limited for the erection of the ferry, and consequently the grant could not attach, or act on the lands thus acquired. As to the period of acquisition of the piece in the centre of the tract, represented to be a portion of the tract acquired from Jarrot, nothing is disclosed in the bill, which affords any certainty as to time; the omission to transcribe into the record, the exhibits referred to in the bill, precludes the possibility of learning when the title was acquired. The allegation in the bill, that Wiggins acquired the title to this portion of the land, several years before the date of the deed from Julie Jarrot, is so manifestly uncertain, that no evidence is afforded, by the statement, that the title was acquired before the 2d day of September, 1820.

The vague and indefinite character of the allegations, affords, then, no evidence that Wiggins was, at any time before the 2d of September, 1820, the owner of the lands near the town of Illinois, in the State of Illinois, contemplated in the act of 1819, and from which the ferry was to be put in operation. It may be said the demurrer admits all the allegations of the bill to be true, and that, therefore, the complainant's title to the land cannot be questioned. It is certainly true, the demurrer admits all that is well stated and pleaded, but it surely cannot supply defects in substance, or cure a defective title, nor yet establish one defectively set forth. It is too obvious to doubt that the title acquired in 1822, could not even aid the acquisition of the privileges conferred by the grant, much less

be the foundation on which the grant was to operate, and vest the privileges named in the law, because of the posterior period of its inception ; and equally so, is the effect following from the want of the clear ascertainment of the title to the other portion of the land, on which it is alleged the ferry was first established.

The conclusion seems, then, very certain, that Wiggins was not the owner of any lands, within the time required by the act of 1819, to be possessed by him, upon which the grant could operate ; and upon this ground alone, the injunction might have been dissolved, and the bill dismissed.

Other questions of grave import, involving the constitutional character of laws connected with the case, have been raised, and elaborately and ably discussed, upon which it does not become necessary for this Court to express an opinion, in order to the decision of the cause. It would, perhaps, be injudicious to express an opinion on these points, at this time, when it is not absolutely necessary ; but more especially so, as the questions raised, involve an enquiry into the extent and rightful exercise of legislative action by the General Assembly of this State, which it is supposed may arise, in at least another cause now pending in this Court, between the same parties.

I am of opinion, for the reasons given, that the judgment should be affirmed, with costs.

Since the delivery of the foregoing opinion, the exhibits referred to in the opinion, and exhibited with the bill in the Circuit Court, have, by the mutual consent of counsel, been filed here. On an inspection thereof, and the deed of McKnight and Brady, particularly, it does not appear that any new fact is shown to induce a change of my opinion. The title is shown, by the exhibits, to be most clearly defective, and all doubt is removed thereon.

WILSON, Chief Justice, LOCKWOOD and BROWNE, Justices :

We concur in the opinion that the judgment of the Circuit Court must be affirmed, on the ground that the bill does not set out with clearness and certainty, that Samuel Wiggins owned any land on the waters of the Mississippi river, near the town of Illinois, on the 2d of March, 1819, or within eighteen months thereafter, on which the grant of the legislature could operate ; and because it does not appear, with certainty, that Samuel Wiggins owned any land on the Mississippi river, on the 6th of February, 1821, to which the ferry, before that time established by said Wiggins, could be removed, in pursuance of the act passed on the 6th of February, 1821.

*Decree affirmed.*

MONDAY, FEBRUARY 22d, 1841, THE NEW JUDGES TOOK THEIR SEATS UPON THE BENCH.

PRESENT:

HON. WILLIAM WILSON, Chief Justice.
HON. SAMUEL D. LOCKWOOD, Associate Justice.
HON. THEOPHILUS W. SMITH, Associate Justice.
HON. THOMAS C. BROWNE, Associate Justice.
HON. SIDNEY BREESE, Associate Justice.
HON. THOMAS FORD, Associate Justice.
HON. WALTER B. SCATES, Associate Justice.
HON. SAMUEL H. TREAT, Associate Justice. (1)

(1) The Hon. Stephen A. Douglass did not take his seat upon the bench until the last day of the term.